# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LENGEORGE BURNS,

    Petitioner,

    v.                                        Case No. 18-CV-1893

BRIAN FOSTER,

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR
## WRIT OF HABEAS CORPUS

    Lengeorge Burns, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Burns was convicted of armed robbery, first-degree reckless injury, and three counts of false imprisonment, all as party to a crime and as a repeater. (Habeas Pet. at 2, Docket # 1.) He was sentenced to fifty-six years of incarceration, consisting of thirty-two years of initial confinement followed by twenty-four years of extended supervision. (*Id.*) Burns alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

    Burns was charged with armed robbery, first-degree reckless injury, and three counts of false imprisonment, all as party to a crime and as a repeater, in connection with the armed robbery of Carl & Doug's tavern in Kenosha, Wisconsin on November 1, 2007. (*State v. Burns*, Appeal No. 2011AP2273 (Wis. Ct. App. Feb. 20, 2013), Answer, Ex. 7, Docket # 15-7 at ¶¶ 1–2.) During his opening statement, the prosecutor explained that Burns was

charged with being a party to a crime, which means that the person must be ready, willing, and able to assist in the crime, even if he did not commit the crime himself. (Transcript of Apr. 22, 2008 Jury Trial ("Apr. 22 JT Tr.") at 44–45, Answer, Ex. 22, Docket # 15-22.) The prosecutor stated that the jury would hear evidence that Burns, along with his cousin, Jimmy Green, Andrew Tyson, and Tyson's friend, Leonard Alexander, planned a "quick lick," meaning "a robbery, a hit and run." (*Id.* at 46.) The prosecutor stated the jury would hear evidence that Burns, Green, and Tyson met in Tyson's apartment prior to the robbery to plan the "quick lick." (*Id.*) In the defense's opening statement, counsel said that Tyson would testify that while Burns was with Green and Tyson prior to the robbery, he was unaware what was going on. (*Id.* at 71–75.)

During the course of the three-day trial, however, the prosecutor presented no evidence of any conversation between Burns, Green, and Tyson planning the robbery. No witnesses positively identified Burns in the company of his co-actors prior to the robbery. Bar patron Marco Briceno testified that around 11:45 a.m., three masked men entered the tavern brandishing firearms and telling everyone to "get the fuck down." (Transcript of Apr. 22, 2008 Jury Trial ("Apr. 22 JT Tr.") at 86, 93–95, Answer, Ex. 22, Docket # 15-22.) Briceno described two of the men as "big guys," (around 6'1" and 250 pounds) and the other as a "littler guy," (around 5'9" and 170 pounds). (*Id.* at 93.) The two "big guys" were later identified as Alexander and Green (*id.* at 67, 214) and the "little guy" was identified as Tyson (*id.* at 106). Briceno testified that Tyson grabbed the tavern's money bag (*id.* at 98) while Alexander and Green waved around their firearms, telling the bar patrons not to

move (*id.* at 96, 99). Briceno testified that he tackled Tyson with such force that he hit his face on one of the tables. (*Id.* at 99–100.) Another patron, Bill Bougneit, began helping Briceno restrain Tyson, at which time, Briceno heard two shots go off. (*Id.* at 101.) Tyson exclaimed that he was hit, and Briceno let him go. (*Id.* at 101–02.) Briceno testified that he saw blood gushing from Bougneit's hip. (*Id.* at 104.) Briceno testified that one of the "big guys" told Tyson to grab the money. (*Id.*) The three suspects then left the bar. (*Id.*) Neither Briceno nor Bougneit, however, identified Burns as one of the suspects in the bar that day. (*Id.* at 124, 167.)

Louise Coleman testified that around 11:40 a.m., she went to Carl & Doug's to cash a check. (*Id.* at 190.) Prior to reaching the tavern, Coleman testified that she was sitting in her car at a stop sign near the tavern, reading a letter. (*Id.*) Coleman saw a black car go past, the exact make and model of a vehicle she was considering buying. (*Id.* at 194.) Coleman saw the same vehicle go past her approximately three times. (*Id.* at 195–96.) She observed four men in the vehicle, two "heavy set" men in the front and two smaller men in the back. (*Id.* at 196.) Coleman could not, however, positively identify who was driving the vehicle. (*Id.* at 215.) As Coleman began walking up the stairs to Carl & Doug's, she saw two men walk out of the tavern and heard someone say that a guy got shot. (*Id.* at 198.) Coleman observed the two men get into a black vehicle (*id.* at 204) and wrote down the vehicle's license plate number (*id.* at 198). She testified that the black vehicle quickly pulled off, nearly side-swiping a truck. (*Id.* at 202.) Coleman testified that she was "absolutely sure" that the car she saw circling the block was the same car that she subsequently saw the two

3

men get into and wrote down the license plate for. (*Id.* at 212.) She testified that Burns was not one of the men she observed leaving the bar that day and get into the black car. (*Id.* at 212–13.)

Justina Sontag testified that she was traveling in the vicinity of 22nd Avenue in Kenosha around 11:50 a.m. on November 1, 2007. (*Id.* at 219.) She observed a black vehicle traveling at a high rate of speed. (*Id.* at 219–20.) Sontag observed an arm come out of the right side of the vehicle and toss a handgun onto the ground. (*Id.* at 220.) Sontag observed the vehicle turn into an apartment complex and recorded the vehicle's license plate number (*Id.* at 223–24.) The license plate number matched the plate recorded by Coleman. (*Id.* at 226.)

Alexander's aunt, Beverly Johnson, testified that at approximately 11:50 a.m. or 12:00 p.m. on November 1, 2007, Alexander showed up at the door of her apartment, along with three other men. (Transcript of Apr. 23, 2008 Jury Trial ("Apr. 23 JT Tr.") at 7–11, Answer, Ex. 23, Docket # 15-23.) Johnson identified Burns as one of the men present with Alexander that day. (*Id.* at 11.) Johnson testified that Tyson—the "little boy"—was bleeding from his nose and mouth. (*Id.* at 13–14.) Tyson asked Johnson if he could get himself cleaned up, and Alexander showed Tyson to the bathroom. (*Id.* at 15–16.) Meanwhile, Green and Burns, were "standing around" and asked whether they should take Tyson to the hospital. (*Id.* at 16.) Johnson testified that Green called Tyson's girlfriend, asking her to pick him up. (*Id.* at 17.) At some point, Johnson observed Tyson put money in his pocket. (*Id.* at 23.) Then, the police showed up at Johnson's apartment complex. (*Id.* at 24.) Johnson

4

exited the apartment and spoke with the officers. (*Id.* at 30.) When Johnson re-entered her apartment, the screen was off her bedroom window. (*Id.* at 33.)

Elise Merow, a resident of Johnson's apartment complex, testified that at approximately 12:30 p.m. on November 1, 2007, she was walking to her car in the parking lot of her apartment building when two men came running towards her car, opened her back car door, and frantically asked if she would take them out of that area for $100. (*Id.* at 52–53.) Merow said no, but one of the men tried to enter her vehicle anyway, until a police officer came running up to her car. (*Id.* at 56.) Although Merow did not identify the two men, the officer who ran up to her car testified that the two men identified themselves as Green and Burns. (*Id.* at 80–81.)

Fabio DeBartolo, the assistant manager of the Family Dollar store in Kenosha, testified that the store has surveillance cameras and identified footage from 10:50 a.m. on November 1, 2007 of both the inside and outside of the store. (*Id.* at 100–02.) DeBartolo testified that the surveillance footage showed a man purchasing surgical gloves. (*Id.* at 103–04.) DeBartolo observed the purchase from the surveillance camera in his office. (*Id.* at 106.)

Tyson's wife, Charlene Tyson, testified that her husband left their residence around 10:00 a.m. on November 1, 2007 to get some milk at the store. (*Id.* at 112–13.) By noon, however, he had not returned. (*Id.* at 113.) Although she could not identify who called her, Charlene testified that a little before or after noon, she received a call from Burns' telephone, asking her to pick her husband up from the Briarcliff apartment building. (*Id.* at 119–20.) When Charlene arrived, however, she saw "police everywhere," but did not see Tyson. (*Id.*

5

at 125.) Charlene testified that neither Green, Burns, nor Alexander came to her home anytime during the morning of November 1, 2007. (*Id.* at 114, 124–25.) She testified that she owned a handgun and kept it in her bedroom. (*Id.* at 109–11.) Charlene later learned that her handgun had been taken from her apartment, and testified that her husband was the only person with access to the apartment. (*Id.* at 116.)

Burns' girlfriend, Desiree Norval, testified that on November 1, 2007, she lent her vehicle to Burns for the day. (*Id.* at 138.) Norval testified that she often lent Burns her car because his vehicle did not work very well. (*Id.*) Norval testified that Burns called her the night before to ask if he could borrow her car. (*Id.* at 138–39.) Norval identified her vehicle, a black car bearing the same license plate as the vehicle identified by both Coleman and Sontag. (*Id.* at 139–40.) The vehicle was registered to Norval and her father, Larry Norval. (*Id.* at 140.) Norval testified that she called Burns around lunch time to see if he wanted to have lunch with her. (*Id.* at 145.) She asked him what was up, and he said nothing. (*Id.*) She asked him how things were going, and he said, "not good" and hung up. (*Id.* at 145–46.)

During closing argument, the prosecutor stated as follows:

We know that the handgun was thrown out from a car, the car allegedly driven by the defendant. So now let's focus a little bit more on what role did the defendant play. We start that day with the fact that Mr. Burns and Mr. Tyson team up with Mr. well, Mr. Burns and Mr. Green team up with Mr. Tyson. And the two of them -- the three of them decide to do something. What are they going to do?

Well there's this discussion you heard the testimony that and it comes in in a couple different ways because Charlene Tyson -- she you heard her testimony. You heard Desiree Norval. That is the girlfriend of the defendant who says she borrows her car to the defendant.

6

(Transcript of Apr. 24, 2008 Jury Trial ("Apr. 24 JT Tr.") at 96–97, Answer, Ex. 24, Docket # 15-24.)

The jury found Burns guilty on all counts. Burns filed a post-conviction motion for relief, arguing that his trial counsel was ineffective for: (1) failing to call Green to testify; (2) failing to object to a jury instruction regarding recently stolen property; and (3) failing to object to the proseuctor's suggestion during closing that the co-actors discussed the robbery plot when no direct evidence of such a discussion was presented. (Resp. Br. at 4–5, Docket # 29.) He further argued that he was convicted on insufficient evidence because the evidence failed to establish his party to a crime liability, specifically, there was no evidence that he knew the armed robbery would occur and that he intended to assist in the robbery before it was committed. (Docket # 15-7 at ¶ 2.) The trial court denied his motion without an evidentiary hearing and the court of appeals affirmed the judgment. (*Id.*)

Burns subsequently filed a Wis. Stat. § 974.06 motion for post-conviction relief, asserting that his post-conviction counsel was ineffective for: (1) failing to object when the State allegedly failed to prove at trial assertions made by the prosecutor in his opening statement and (2) not renewing a motion for a mistrial on the grounds a juror saw Burns guarded by a deputy in the courtroom. (*State v. Burns*, Appeal No. 2016AP733 (Wis. Ct. App. July 18, 2018), Answer, Ex. 17, Docket # 15-17.) The court of appeals affirmed the trial court's order (*id.*) and the Wisconsin Supreme Court denied Burns' petition for review (Answer, Ex. 20, Docket # 15-20).

Burns timely filed a habeas corpus petition in this court. Burns raises eight grounds for relief: ground one—conviction upon insufficient evidence; grounds two, three, four, five, and six—ineffective assistance of trial counsel; ground seven—ineffective assistance of post-conviction counsel; and ground eight—abuse of discretion by trial court. (Docket # 1.)

## STANDARD OF REVIEW

Burns' petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

8

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Burns argues he is entitled to habeas relief on multiple grounds. First, Burns argues that the evidence presented at trial was insufficient to establish the knowledge and intent elements of aiding and abetting as a party to a crime. (Petitioner's Br. at 2, Docket # 25 at

9

3.) Second, Burns argues that his trial counsel was ineffective for: (1) failing to object to the prosecutor's closing statements where the prosecutor alluded to evidence that he never produced and (2) failing to object to the use of Wis. J.I. 173—Criminal.[1] Next, Burns argues that his post-conviction counsel was ineffective for failing to raise ineffective assistance of trial counsel as to (1) trial counsel's failure to object to the prosecutor's opening statements where the prosecutor alluded to evidence that he never produced and (2) trial counsel's failure to renew his motion for a mistrial based on a juror's observation of Burns under the watch of an armed guard. Burns also generally argues that while post-conviction counsel did raise the issue of trial counsel's ineffectiveness for failing to object to the prosecutor's closing argument, he argued the issue inadequately. Finally, Burns argues that the circuit court abused its discretion by denying Burns the opportunity to preserve trial and post-conviction counsel's testimony.

1. *Sufficiency of the Evidence*

Burns was charged with armed robbery, first-degree reckless injury, and false imprisonment, all as party to a crime. Burns argues there was insufficient evidence to establish his guilt as party to a crime. The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When insufficiency of evidence is asserted as the basis

---

[1] Although Burns also raised a claim for ineffective assistance of trial counsel for failing to call Green to testify at trial, Burns now withdraws this issue. (Docket # 25 at 3.)

for a habeas petition, the petitioner must show "'upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt.'" *Cabrera v Hinsley*, 324 F.3d 527, 533 (7th Cir. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 324 (1979)). The inquiry does not require the federal habeas court to "ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citing *Woodby v. INS*, 385 U.S. 276, 282 (1966)). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* A federal habeas court determines the sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. *See id.* at 324 n.16.

In this case, in considering Burns' sufficiency of the evidence argument, the Wisconsin Court of Appeals used a standard consistent with *Jackson*. The court of appeals stated that it would "uphold a criminal conviction unless the evidence, viewed most favorably to the State and the conviction, 'is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilty beyond a reasonable doubt.'" (Docket # 15-7 at ¶ 3 (quoting *State v. Booker*, 2006 WI 79, ¶ 22, 292 Wis. 2d 43, 717 N.W.2d 676).) As such, the court of appeals identified the correct governing legal rule. Thus, the only issue before me to resolve on habeas review is whether the state court unreasonably applied that rule to the facts of Burns' case or unreasonably determined the facts in light of the evidence presented. In making that

11

determination, it is important to recall that in a federal habeas corpus proceeding, the court's review is tempered by AEDPA's deferential constraints.

Under Wisconsin law, a person is guilty as "party to a crime" if he either directly commits a crime or intentionally aids and abets the commission of it. Wis. Stat. § 939.05(2). Aiding and abetting consists of two elements: (1) some conduct (either verbal or overt), that as a matter of objective fact aids another person in the execution of a crime; and (2) conscious desire or intent that the conduct will in fact yield such assistance. *State v. Rundle*, 176 Wis. 2d 985, 1005, 500 N.W.2d 916, 924 (1993). The trial court in Burns' case instructed the jury as follows:

> If a person intentionally aids and abets the commission of a crime, then that person is as guilty of the crime as the person who directly committed it. A person intentionally aids and abets the commission of a crime when acting with knowledge or belief that another person is committing or intends to commit a crime, he knowingly either assists the person who commits the crime or is ready and willing to assist and the person who commits the crime knows of the willingness to assist.

> To intentionally aid and abet armed robbery, the defendant must have known that another person was committing or intended to commit the crime of armed robbery and he must have had the purpose to assist in the commission of that crime. However, a person does not aid and abet if he is only a bystander or spectator and does nothing to assist the commission of the crime.

(Docket # 15-24 at 51.) While Burns does not dispute there was sufficient evidence to support the first element articulated in *Rundle*, he argues the evidence was insufficient to establish that he had a conscious desire or intent to assist in the commission of the crime. (Petitioner's Br. at 13.) The court of appeals relied on the following evidence to uphold Burns' conviction: Burns borrowed his girlfriend's car on the day of the robbery; two men

12

exited the vehicle at a Family Dollar store where they purchased disposable gloves; the vehicle circled the tavern's block several times; Burns' co-actors entered the tavern and committed the crimes; the robbers fled the tavern and jumped into the vehicle; the vehicle was found at the apartment of a co-actor's aunt; when police entered the apartment, Burns and his co-actors escaped through the apartment's bedroom window; Burns was arrested in the apartment complex's parking lot while trying to get a ride; Burns had $260 in twenty dollar bills in his pocket; and the tavern's stolen bank bag, containing checks and cash, was found in the vehicle used in the robbery. (Docket # 15-7 at ¶ 5.) The court of appeals found that intent to aid and abet can be inferred from conduct and jurors consider the evidence in the aggregate, using common sense. (*Id.* ¶ 6.) The court of appeals concluded that the jury had sufficient evidence from which to infer that Burns aided and abetted the armed robbery, specifically: arranging the vehicle, driving the get-away car, fleeing police, and having significant cash on him when apprehended. (*Id.* ¶ 7.)

Burns' principle argument is that the jury was required to draw inferences about what Burns knew prior to and during the robbery from evidence that occurred *after* the robbery was complete. (Petitioner's Br. at 15.) Burns contends that while the evidence may be sufficient to demonstrate that he was an accessory after the fact, "the record in this case is void of what actually took place between Burns and his co-defendants prior to the crime." (Petitioner's Reply Br. at 3, Docket # 36.) He argues that the jury was forced to draw inferences based on the prosecutor's unsupported prejudicial arguments. (*Id.*)

13

The prosecutor indeed promised a lot in his opening statement that he did not deliver. As stated above, the prosecutor told the jury they would hear evidence that Burns, Green, and Tyson met in Tyson's apartment prior to the robbery to plan the "quick lick." (Apr. 22 JT Tr. 46.) Not only did he not present this evidence, he seemingly forgot that he had not presented the evidence during closing when he began to argue "Well there's this discussion you heard the testimony . . .," forcing him to pivot to argue the evidence of planning came in through Charlene Tyson and Noval. (Apr. 24 JT Tr. 96–97.) However, Charlene testified that none of her husband's co-actors were in her apartment that day (Apr. 23 JT Tr. 114, 124–25) and Norval testified that Burns frequently borrowed her car (*id.* at 138). Despite the prosecution's blundering, the court of appeals' assessment that the evidence sufficiently supported Burns' conviction does not run afoul of *Jackson*. Burns provides no support for his assertion that intent cannot be inferred from actions taken after the crime was committed. *See State v. Marshall*, 92 Wis. 2d 101, 122, 284 N.W.2d 592, 601 (1979) ("Merely locating the victim for the murderer and bringing the two together could constitute aiding and abetting as could driving a get-away car once the offense was complete.").

Intent, "[b]y its very nature," is "an elusive element and is rarely susceptible to proof by direct evidence." *Id.* at 123, 284 N.W.2d at 601. If the prosecutor could have delivered on his promise to present evidence that Burns, Green, and Tyson talked about a plan to rob the tavern, the "elusive" intent element would have been fairly easily established by direct evidence. Despite the prosecutor's failure to deliver direct evidence, the court of appeals

14

correctly determined that Burns' intent could be inferred from the evidence of his conduct, including: procuring the vehicle, driving to the tavern, driving his co-actors away from the tavern and to Alexander's aunt's house, evading police, and taking proceeds from the robbery. As the court of appeals' determination is not contrary to *Jackson*, Burns is not entitled to habeas relief on this ground.

   2.    *Ineffective Assistance of Trial Counsel*

Burns argues that his trial counsel was ineffective for: (1) failing to object to the prosecutor's closing statements where he alluded to evidence that he never produced and (2) failing to object to the use of the jury instruction on circumstantial evidence–stolen property, Wis. J.I. 173—Criminal. I will address each argument in turn.

   2.1    Legal Standard

Under the familiar test established in *Strickland v. Washington*, a claim of ineffective assistance of counsel requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that the "deficient performance prejudiced the defense." *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012) (quoting 466 U.S. 668, 687 (1984)). Judicial scrutiny of counsel's performance is "highly deferential," *Strickland*, 466 U.S. at 689, and under AEDPA, I must defer to the state court's application of *Strickland* on federal habeas review, meaning that my evaluation of counsel's performance is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Case 2:18-cv-01893-NJ   Filed 02/23/21   Page 15 of 28   Document 38

2.2    Failure to Object to Prosecutor's Closing Statement

Burns argues trial counsel was ineffective to failing to object to the following statement in the prosecutor's closing argument:

> We know that the handgun was thrown out from a car, the car allegedly driven by the defendant. So now let's focus a little bit more on what role did the defendant play. We start that day with the fact that Mr. Burns and Mr. Tyson team up with Mr. well, Mr. Burns and Mr. Green team up with Mr. Tyson. And the two of them -- the three of them decide to do something. What are they going to do?

> Well there's this discussion you heard the testimony that and it comes in in a couple different ways because Charlene Tyson -- she you heard her testimony. You heard Desiree Norval. That is the girlfriend of the defendant who says she borrows her car to the defendant.

(Apr. 24 JT Tr. at 96–97.) Burns argues that the prosecutor's remarks suggested to the jury that there was evidence about a discussion among co-actors, when no witness testified to such a discussion. The court of appeals rejected this argument. In so doing, the court found that even with no direct evidence, there was sufficient circumstantial evidence that Burns aided and abetted the robbery; the prosecutor's remarks did not stray from the evidence; the jury was instructed that if an attorney's remarks suggested facts not in evidence, the jury should disregard the suggestion; and Burns failed to demonstrate prejudice. (Docket # 15-7 at ¶ 17.)

As an initial matter, as the respondent concedes, the court of appeals made a factual error in its analysis. (Resp. Br. at 20.) The court of appeals incorrectly stated that the prosecutor later conceded during closing argument that he had no direct evidence of a discussion between the co-actors. While the prosecutor indeed conceded that: "there is not

16

any direct testimony with regards to this discussion that was had between the four defendants," (Apr. 24 JT Tr. 41), the record shows this statement was made *outside* of the jury's presence (*id.* 31–32). Thus, the concession did not come during closing argument. And although the prosecutor caught himself and switched course as he began to argue in closing about the "discussion" the jurors heard, when coupled with the prosecutor's promise in opening that they would hear discussions about a "quick lick" taking place in Tyson's apartment, the prosecutor's statement was misleading at best.

Even so, Burns has not shown the court of appeals' determination is an unreasonable application of *Strickland*. The jury was instructed that opening and closing statements are not evidence, and the prosecutor himself reminded the jury as such during both his opening and closing. (Apr. 22 JT Tr. 42, 43; Apr. 24 JT Tr. 72, 84.) Although the prosecutor's statement during closing was misleading, the jury could evaluate for itself, having heard the evidence, that no direct evidence of a discussion to plan the robbery was presented. As discussed above, however, there was sufficient circumstantial evidence to support Burns' conviction. To establish prejudice under *Strickland*, Burns must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Burns has not shown the court of appeals erred in this regard. Thus, he is not entitled to habeas relief on this ground.

17

### 2.3   Use of Wis. J.I.—Criminal 173

Burns challenges trial counsel's failure to object to the use of Wis. J.I.—Criminal 173, "Circumstantial Evidence—Possession of Recently Stolen Property." The jury was instructed as follows:

> Evidence has been presented that the defendant had recently stolen property in his possession. Whether the evidence shows that the defendant participated in some way in the taking of the property, it's exclusively for you to decide. Consider the time and circumstances of the possession in determining the weight that you give to this evidence.

(Docket # 15-7 at ¶ 14.)

Burns argues that the instruction was improper because there was no evidence (either direct or circumstantial), that the money Burns possessed at the time of his arrest was recently stolen property. (Petitioner's Reply Br. at 10.) He further argues that the jury was improperly instructed to conclude that Burns had stolen property in his possession, relieving the State of its burden of proof. (*Id.*) The court of appeals rejected this claim, finding sufficient circumstantial evidence from which the jury could infer that Burns possessed stolen property and finding that nothing in the instruction directed the jury to presume that the evidence was true. (*Id.* at ¶ 15.)

Under Wisconsin law, a trial court has wide discretion in deciding which jury instructions to give, provided the instructions chosen fully and fairly inform the jury of the law applicable to the particular case. *State v. May*, 217 Wis. 2d 290, 577 N.W.2d 387 (Ct. App. 1998). The court of appeals was presented with Burns' same argument in *State v. Schultz*. In *Schultz*, the defendant argued that Wis. J.I.—Criminal 173 "deprived him of a

18

jury determination" on whether the alleged property was actually stolen. 2010 WI App 124, ¶ 19, 329 Wis. 2d 424, 433, 791 N.W.2d 190, 195. The court of appeals rejected this argument. It found that the jury instruction contained a factually accurate statement— "[e]vidence has been presented that the defendant possessed recently stolen property." *Id.* The court concluded that the instruction did not require, however, the jury to *accept* that evidence, nor did it suggest that the trial court had already made a credibility determination. *Id.* The court concluded that the jury was free to give the evidence whatever weight it deemed appropriate. *Id.*

This reasoning applies with equal force to Burns' case. The jury in this case was also presented with a factually accurate statement—"Evidence has been presented that the defendant had recently stolen property in his possession." The evidence presented need not be direct evidence, and as explained above, there was sufficient circumstantial evidence to support that the cash found on Burns' person upon his arrest and the tavern's money bag containing cash and checks found in the car Burns was driving, were stolen property. The jury was instructed that it was up to them to determine the weight to give the evidence. Thus, the instruction did not, as Burns contends, presume the money was stolen. Because the jury instruction was properly given, any objection would have been futile. As such, counsel was not ineffective for failing to object to it. Burns is not entitled to habeas relief on this ground.

19

*3.    Ineffective Assistance of Post-Conviction Counsel*

Burns argues that his post-conviction counsel was ineffective for failing to raise ineffective assistance of trial counsel as to (1) trial counsel's failure to object to the prosecutor's opening statements where he alluded to evidence that he never produced and (2) trial counsel's failure to renew his motion for a mistrial based on a juror's observation of Burns under the watch of an armed guard. Burns also generally argues that while post-conviction counsel did raise the issue of trial counsel's ineffectiveness for failing to object to the prosecutor's closing argument, he argued the issue inadequately. I will address each argument in turn.

3.1    Legal Standard

As an initial matter, I must address whether I can even consider Burns' claim of ineffective assistance of postconviction counsel. Section 2254(i) provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."

Under Wisconsin criminal procedure, issues involving the ineffective assistance of trial counsel are raised in Wis. Stat. § 974.02 motions before the trial court and issues of ineffective assistance of postconviction counsel are raised in Wis. Stat. § 974.06 motions before the trial court. Burns argues that postconviction counsel, who filed the initial motion pursuant to Wis. Stat. § 974.02, was ineffective for failing to raise additional grounds of ineffective assistance of trial counsel. Courts in this district have found that challenging postconviction counsel's failure to preserve the issue of ineffective assistance of trial counsel

20

for direct appeal does not regard counsel's performance during a collateral proceeding, and thus is not precluded by 28 U.S.C. § 2254(i). *Nelson v. Huibregtse*, No. 07-C-1022, 2009 WL 73149, at *4 n.1 (E.D. Wis. Jan. 6, 2009); *McCloud v. Jenkins*, No. 07-C-1050, 2007 WL 4561108, at *4 n.1 (E.D. Wis. Dec. 21, 2007).

Subsequent to those cases, however, the Seventh Circuit decided *Huusko v. Jenkins*, 556 F.3d 633, 635 (7th Cir. 2009), and questioned whether Wisconsin's procedure in § 974.02 should be deemed "collateral," noting that in federal court and most state courts, a hearing to inquire into the effectiveness of trial counsel is normally a collateral proceeding. *Id.* at 635–36. The court noted that if Wisconsin's § 974.02 proceeding was deemed non-collateral and therefore outside the scope of § 2254(i), then "Wisconsin's prisoners will enjoy a right to effective assistance of counsel in pursuing ineffective-assistance contentions, even though prisoners in Indiana, Illinois, and most other states do not enjoy such a right." *Id.* at 636. Having posed the question, the court decided not to answer it, noting that the state had waived it and petitioner's claim failed on the merits. *Id.* at 635.

In an unpublished decision subsequent to *Huusko*, the Seventh Circuit noted that while it had previously raised the question of whether a posttrial motion under § 974.02 was considered collateral, "more recently—as advocated by Wisconsin—we have understood a § 974.02 motion to be a step toward a defendant's direct appeal, *see Nash v. Hepp*, 740 F.3d 1075, 1079 (7th Cir. 2014). And for a direct appeal the assistance of counsel is constitutionally guaranteed." *London v. Clements*, 600 F. App'x 462, 466 (7th Cir. 2015). Given the Seventh Circuit's more recent position (albeit stated in a nonprecedential

21

disposition) and the respondent's failure to raise the issue, I will assume, without deciding, that Burns' ineffective assistance of postconviction counsel claims are not barred by § 2254(i).

The Sixth Amendment, made applicable to the states by way of the Due Process Clause of the Fourteenth Amendment, *see Gideon v. Wainwright*, 372 U.S. 335 (1963), entitles a criminal defendant to the effective assistance of counsel not only at trial, but during his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387 (1985). The appropriate standard for evaluating a claim of ineffective assistance of appellate counsel is the standard established in *Strickland*. *See Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001).[2] The general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel, "but with a special gloss when the challenge is aimed at the selection of issues to present on appeal." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). Because appellate counsel is not required to raise every non-frivolous issue on appeal, appellate counsel's performance is deficient under *Strickland* only if she fails to argue an issue that is both "obvious" and "clearly stronger" than the issues actually raised. *Id.* at 898. Proving that an unraised claim is clearly stronger than a claim that was raised is generally difficult "because the comparative strength of two claims is usually debatable." *Id.* (internal quotation and citation omitted).

---

[2]Although Burns does not challenge postconviction counsel's performance in the court of appeals, but in the § 974.02 proceeding in the trial court (which is how claims of how ineffective assistance of trial counsel must be made in Wisconsin), given the nature of the proceedings (i.e., Burns challenges post-conviction counsel's failure to raise specific arguments), I consider counsel's performance using the appellate attorney "clearly stronger" standard of *Strickland*. *See Hipler v. Hepp*, No. 09-CV-371, 2010 WL 1687873, at *6 n.2 (E.D. Wis. Apr. 23, 2010).

22

### 3.2 Application to this Case

#### 3.2.1 Failure to Object to Prosecutor's Opening Statement

As an initial matter, to the extent Burns argues post-conviction counsel did not adequately present the claim of ineffective assistance of trial counsel for failing to object to the prosecutor's closing argument, this claim fails as I have already determined trial counsel was not ineffective in this manner.

Relatedly, Burns argues that post-conviction counsel was ineffective for failing to raise trial counsel's failure to object to the prosecutor's opening statement, as well as his closing statement. Burns has not demonstrated, however, that this argument was "clearly stronger" than the arguments post-conviction counsel did raise. As the court of appeals found, the mere fact that certain statements made during a prosecutor's opening statement were not proven at trial is not grounds, in and of itself, for a mistrial. (Docket # 15-17 at 4.) From both parties' opening statements, it appears both sides intended to call certain of Burns' co-actors as witnesses, and never did. (*See* Apr. 22 JT Tr. 72–73, during defendant's opening statement, defense counsel stated that the jury would hear testimony from Tyson.) Thus, it would not make strategic sense to object to the prosecutor's opening when both sides failed to call witnesses that each had promised to the jury. Burns is not entitled to habeas relief on this ground.

#### 3.2.2 Failure to Renew Motion for a Mistrial

After the jury was excused to deliberate, defense counsel informed the court that a juror, looking to deliver a message to the bailiff, inadvertently walked into a room where

23

Burns was sitting, handcuffed, under armed guard. (Apr. 24 JT Tr. 146–48.) Defense counsel moved for a mistrial based on the juror's observations. (*Id.* at 148.) The court decided to wait until the jury reached a verdict, and then decide what to do. (*Id.* at 160.) After the jury returned a guilty verdict, the court questioned the juror about what he saw the previous day. (Transcript of Apr. 25, 2008 Jury Trial ("Apr. 25 JT Tr.") at 7–16, Answer, Ex. 25, Docket # 15-25.) The juror stated that he took about two steps into the room, saw Burns' face and the deputy, realized he was not supposed to be in there, and walked out. (*Id.*) He said the entire encounter lasted about ten seconds. (*Id.* at 11.) When he returned to the jury room, he told the other jurors that he accidentally saw the defendant and the sheriff. (*Id.* at 12.)

The court of appeals found that post-conviction counsel was not ineffective for failing to renew his motion for a mistrial. (Docket # 15-17 at 5.) The court concluded that the juror's observation was brief and inadvertent, he stated he did not see any handcuffs or ankle bracelets on Burns, and only told the other jurors that he had seen Burns and the deputy in a room. (*Id.*) The court of appeals concluded that there was no evidence that a renewed motion for a mistrial would have been granted. Thus, the court found that Burns failed to show ineffective assistance of trial counsel or that his claim was clearly stronger than those actually raised by post-conviction counsel. (*Id.*) Burns has not demonstrated that the court of appeals' decision runs afoul of *Strickland*. Again, Burns must show that this argument was clearly stronger than the arguments raised by post-conviction counsel. Trial counsel did, in fact, make a motion for a mistrial; however, given the statements by the juror

24

regarding the brevity of the encounter with Burns, it was a reasonable decision of trial counsel to not renew the motion. Burns is not entitled to habeas relief on this ground.

### 4. *Abuse of Discretion*

Burns argues that the trial court abused its discretion in denying Burns an evidentiary hearing as to his post-conviction motions claiming ineffective assistance of trial and post-conviction counsel. (Petitioner's Br. at 37.) To the extent Burns challenges the state court's decision whether a hearing was warranted under state law, Burns is not entitled to federal habeas relief. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Burns also argues the denial of an evidentiary hearing violated his Sixth and Fourteenth Amendment rights. (Petitioner's Br. at 37–38.) To the extent Burns challenges the trial court's denial of an evidentiary hearing as a constitutional claim, Burns failed to raise it as such before the State court. In his brief before the Wisconsin Court of Appeals, Burns argued that the trial court erred in its application of *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996), the standard under Wisconsin law for granting an evidentiary hearing, when it denied him a hearing. (Answer, Ex. 13, Docket # 15-13.)

The Supreme Court has interpreted § 2254's definition of exhaustion to require that a petitioner "fairly present" the federal issue to the state courts as a precondition to exhaustion. *Verdin v. O'Leary*, 972 F.2d 1467, 1472–73 (7th Cir. 1992). For a constitutional claim to be fairly presented to a state court, both the operative facts and the "controlling legal principles" must be submitted to that court. *Id.* at 1474. Burns clearly did not present

25

this issue as a constitutional claim before the court of appeals. Thus, Burns has procedurally defaulted this claim. Although a procedural default may be excused if a petitioner demonstrates either cause for and actual prejudice arising from failing to raise the claim as required, or that enforcing the default would lead to a "fundamental miscarriage of justice," *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003), Burns has established neither exception. Thus, Burns is not entitled to habeas relief on this ground.

## CONCLUSION

Burns alleges that he is entitled to habeas relief due to ineffective assistance of both trial and post-conviction counsel. He also alleges he was convicted on insufficient evidence and that he was improperly denied an evidentiary hearing by the state court. I find that none of these grounds entitle Burns to habeas relief. Thus, Burns' petition for a writ of habeas corpus is denied.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate

to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 and n.4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

Jurists of reason would not find it debatable that Burns is not entitled to habeas relief. Thus, I will deny Burns a certificate of appealability. Of course, Burns retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

27

Dated at Milwaukee, Wisconsin this 23rd day of February, 2021.


BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge

28